**Linda WOODMAN, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–15–00032–CR, NO. 14–15–00033–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed April 5, 2016

Discretionary Review Refused July 27, 2016

Linda Icenhauer–Ramirez, Austin, TX, for Appellant.

Lisa Dotin Stewart, Lisa C. McMinn, Austin, TX, for State.

Panel consists of Justices Christopher, McCally, and Busby.

## OPINION

Tracy Christopher, Justice

This is an appeal from two convictions arising out of an auto-pedestrian accident. In three issues, appellant challenges the trial court's rulings on two motions for a continuance, two requested changes to the jury charge, and a motion for new trial. Finding no reversible error with respect to any of appellant's issues, we affirm the trial court's judgments.

## BACKGROUND

Appellant got behind the wheel of her SUV, sped down a major city street, and collided with a car that was waiting to turn from the center lane. The other car was pushed aside during the collision, and appellant continued driving. She crossed into the oncoming lanes of traffic, jumped a curb, and accelerated down the sidewalk, where she hit two pedestrians. One of the pedestrians died as a result of the impact, and the other sustained serious bodily injuries.

The State charged appellant with manslaughter and aggravated assault. The State's theory of the case was that the accident resulted from appellant getting high on opiates. The defense's theory was that appellant had suffered a seizure while driving.

At trial, the State produced evidence showing that, on the day before the accident, appellant had actually suffered a seizure. It was the first seizure of her life, and it occurred when she was indoors, without prior symptoms. Appellant was admitted to the hospital for an overnight observation. During her stay, she made repeated complaints of severe head and neck pain, and she sought medication to alleviate that pain. Medical staff administered several doses of morphine intravenously. In between the morphine doses, appellant received Percocet, which is a brand name for oxycodone, another opiate painkiller.

The last dose of morphine was administered to appellant at 3:00 p.m. on the day of the accident. Appellant was discharged at 5:00 p.m., when the morphine was expected to have its peak effect. Medical staff testified that appellant appeared normal at the time of discharge, and she left the hospital in a taxi. Two hours later, at 7:00 p.m., the accident occurred.

After hitting the pedestrians, appellant moved back onto the street and continued to drive. She crashed between two poles a few hundred yards away from where the pedestrians were struck. Bystanders rushed to appellant's aid and pulled her out of the vehicle. She had a dazed and confused look on her face, but she was able to converse, and she told the bystanders that she was fine physically. She also said that she had hit a pothole and lost control of her vehicle. There were no potholes in the street, however, and a mechanic who examined the wreckage of the SUV testified that there should have been no mechanical issues that precluded appellant from braking.

Appellant refused to be examined by first responders. Nevertheless, first responders observed that appellant was not quite normal. Her pupils were constricted, which indicated that she had opiates in her system. She was "on the nod," meaning she was swinging between states of alertness and drowsiness, another sign of opiates. And she was not exhibiting any signs of stress or adrenaline, which are common after accidents.

Police administered three field sobriety tests, and appellant showed clues of intoxi-

cation on each of them. Police then arrested appellant and transferred her to the county jail.

At the jail, appellant consented to have her blood drawn. The jail's nurse recommended that appellant should be taken to the hospital because appellant had low oxygen saturation levels. Once at the hospital, appellant informed another nurse about her prior hospitalization and the circumstances of her accident. Appellant also told this nurse that she had taken six to eight pills of Percocet after being discharged from the hospital—although, she did not reveal the precise time when this medicine was taken. According to the nurse, a normal dose of Percocet is only one or two pills.

A toxicologist testified that appellant had a concentration level of 0.23 milligrams of oxycodone per liter of blood, which translated to "a very significant amount" of Percocet, more than twice the recommended dose for a person taking that drug for chronic pain. The toxicologist also testified that there were trace amounts of morphine in appellant's blood, but no traces of alcohol.

Appellant did not testify, but during closing statements, her counsel made several arguments in her defense. Counsel argued that the evidence supported a finding that appellant had suffered a second seizure. Many of the eyewitnesses testified that they heard the SUV revving, rather than braking, and counsel explained that appellant's leg could have been locked on the accelerator because of a seizure. Counsel also argued that appellant's confusion after the accident was consistent with a condition that typically follows a seizure.

Addressing the toxicology evidence, counsel suggested that appellant could have taken the Percocet after the accident, rather than before it. Counsel emphasized that the State never proved the exact time

when appellant ingested the Percocet. Counsel also referred to the toxicologist's testimony that appellant possibly consumed the Percocet at 7:15 p.m.

The jury rejected these defensive theories and convicted appellant on both counts. Punishment was assessed at twenty years' imprisonment on the manslaughter charge, and thirteen years' imprisonment on the aggravated assault charge. A fine of $10,000 was also assessed in each offense.

## THE MOTIONS FOR CONTINUANCE

One week before the start of trial, the State tendered to defense counsel a copy of appellant's hospital records, which the State had received three or four days earlier. The records spanned 1,095 pages, and many of them predated appellant's seizure event.

On the day after receiving the records, counsel filed a written motion for continuance, in which he asserted that the records were too voluminous to digest. The trial court set the motion for a hearing the very next day. After hearing arguments from both sides, the trial court denied the motion for continuance.

On the following day, the State received an additional record from the hospital. The record was a "Safety Event" form, which was prepared by the hospital as part of an internal investigation two days after the accident. The State immediately tendered a copy of the form to defense counsel. Four days later, on the morning of trial, counsel orally moved for a continuance. Counsel argued that he was entitled to know who was involved in the creation of the form, and to see the notes of the persons supporting the conclusions made in the form. The trial court denied the motion for continuance, explaining that the hospital's conclusions were based on medi-

cal records that had already been provided to the defense.

In her first issue on appeal, appellant contends that the trial court abused its discretion by denying her two motions for continuance. The State counters that this issue has not been preserved. We agree with the State.

■ The Code of Criminal Procedure provides: "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." Tex. Code Crim. Proc. art. 29.03. A separate provision in the code provides: "All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. The Court of Criminal Appeals has construed these provisions to mean that a sworn and written motion for continuance is necessary to preserve any complaint associated with the denial of the motion. *See Blackshear v. State,* 385 S.W.3d 589, 591 (Tex. Crim.App.2012). "[I]f a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *Anderson v. State,* 301 S.W.3d 276, 279 (Tex.Crim.App.2009).

■ Appellant's second motion for continuance was oral, rather than written, and it was not sworn. Accordingly, appellant did not preserve any complaint arising out of the denial of that motion. *See Blackshear,* 385 S.W.3d at 591.

■ Appellant's first motion for continuance was written, but it was not properly sworn. There was no verification or affidavit attached to the motion. The nearest thing to a sworn statement was a single line above defense counsel's signature, which read: "Respectfully submitted and the above facts sworn to by as true based upon information and belief." This statement does not qualify as an oath. There was no jurat or declaration that counsel had made his averments under penalty of perjury. *See* Tex. Civ. Prac. & Rem. Code § 132.001. Because appellant's first motion was not properly sworn, we conclude that she failed to preserve her complaint for appellate review.

We overrule appellant's first issue.

## CHARGE ERROR

During the charge conference, appellant requested a jury instruction on involuntary intoxication. The trial court denied that request. Appellant then complained that the charge contained another instruction, which stated that voluntary intoxication was not a defense. Appellant objected that this instruction amounted to an unfair comment on the weight of the evidence. The trial court overruled that objection as well.

In her second issue, appellant argues that the trial court erred by denying her requested instruction for involuntary intoxication and by charging the jury that voluntary intoxication was not a defense.

We review complaints of charge error under a two-step process, considering first whether error exists. *See Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App.2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984).

### Involuntary Intoxication

■ Involuntary intoxication is an affirmative defense. *See Farmer v. State,* 411 S.W.3d 901, 911–12 (Tex.Crim.App. 2013) (Cochran, J., concurring); *Torres v. State,* 585 S.W.2d 746, 749 (Tex.Crim.App. [Panel Op.] 1979). A defendant is entitled to an instruction on that defense when the

evidence shows that she exercised no independent judgment or volition in the taking of the intoxicant, and as a result of her intoxication, she did not know that her conduct was wrong. *See Farmer*, 411 S.W.3d at 912 (Cochran, J., concurring); *Nelson v. State*, 149 S.W.3d 206, 210 (Tex. App.—Fort Worth 2004, no pet.).

Courts have recognized that a person's intoxication can be involuntary when the intoxication arises because of: (1) the fault of another, such as through force, duress, or fraud; (2) the person's own accident, inadvertence, or mistake; (3) a physiological or psychological condition beyond the person's control; or (4) a medically prescribed drug that causes unexpected side effects. *See Farmer*, 411 S.W.3d at 913 (Cochran, J., concurring).

Appellant's argument appears to rely on this last method. In her brief, appellant asserts that she was prescribed and given both morphine and Percocet by the hospital. She then concludes, without further explanation, that this evidence was sufficient to entitle her to a defense for involuntary intoxication. We disagree.

■ Intoxication by prescription medicine occurs only when the person has no knowledge that the medicine has possibly intoxicating side effects. *See Mendenhall v. State*, 15 S.W.3d 560, 565–66 (Tex. App.—Waco 2000) (the defendant was entitled to an instruction on involuntary intoxication where the evidence showed that his medicine could cause adverse effects depending on his diet, and the defendant testified that medical personnel "did not provide him much education on the appropriate diet for his condition"), *aff'd*, 77 S.W.3d 815 (Tex.Crim.App.2002). Viewing the record in the light most favorable to the requested instruction, there is simply no evidence that appellant was unaware of the effects of morphine and Percocet. Thus, the evidence did not raise the de-

fense of involuntary intoxication, and the trial court did not err by denying appellant's requested instruction. *See Aliff v. State*, 955 S.W.2d 891, 893 (Tex.App.—El Paso 1997, no pet.) (the defendant was not entitled to an instruction on involuntary intoxication where there was no evidence that he took the intoxicating drugs without knowledge of their effect).

### *Voluntary Intoxication*

■ The trial court's charge included a paragraph that stated as follows: "Voluntary intoxication does not constitute a defense to the commission of crime. 'Intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." This paragraph tracked the language of Sections 8.04(a) and 8.04(d) of the Texas Penal Code.

Appellant contends that this instruction on voluntary intoxication operated as a comment on the weight of the evidence. Appellant cites only a single case for authority, *Hess v. State*, 224 S.W.3d 511 (Tex.App.—Fort Worth 2007, pet. ref'd). There, in a prosecution for driving while intoxicated, the charge instructed the jury that it "may consider the Defendant's refusal to submit to a breath test as evidence in this matter." *Id.* at 514. The court of appeals held that this instruction was erroneous, in part because it singled out an item of evidence for the jury's attention. *Id.* at 514–15.

*Hess* is distinguishable because the instruction in this case did not refer to any item of evidence. Instead, it recited the law applicable to the case, which the trial court was required to provide. *See* Tex. Code Crim. Proc. art. 36.14. The trial court did not err by instructing the jury that voluntary intoxication was not a defense. *See Casey v. State*, 215 S.W.3d 870,

886–87 (Tex.Crim.App.2007) (there was no error where the charge set forth the law applicable to the case by tracking the language of the statute).

We overrule appellant's second issue.

## THE MOTION FOR NEW TRIAL

The jury determined appellant's guilt on the Friday before Labor Day. The punishment stage of trial began that same Friday, and deliberations commenced the following Tuesday.

On Labor Day, when the court was still in recess, one of the jurors visited a café, which was in a shopping center located directly across the street from where the two pedestrians were hit. The juror had been to the area before, but she decided to cross the street and walk along the sidewalk where the accident had occurred. The juror did not walk the full length of the crime scene.

The next day, after the jury had returned its verdicts on punishment, the trial court released the jury from its instructions and allowed the attorneys to speak with the jury in the deliberation room. During the discussion that followed, the juror who had visited the crime scene on Labor Day asked the attorneys if they had ever walked the scene. The prosecutors answered that they had walked the scene, and defense counsel answered that he had driven by it more than once. The juror then revealed that she had recently visited the crime scene. The juror also remarked that, from her vantage point of where the pedestrians were struck, she could not see the area next to the intersection where appellant's car had finally come to a rest. One of the prosecutors asked if there was anything that the State could have done differently about the trial. A different juror responded that the State could have provided a better diagram of the crime scene.

One week later, the State recorded a private interview with the juror who had visited the crime scene. Based on the questions asked of the juror, the State appeared to be concerned that the juror may have discussed her trip with the other jurors. The juror claimed that she did not remember mentioning her trip during deliberations. According to the juror, she merely said, "It's a huge scene," which is a remark that she and her fellow jurors had made earlier.

The juror explained that if she had known that she had done something wrong by going to the crime scene, she would not have "blurted it out" to the attorneys. The juror also explained that she was familiar with the general area of the accident, and that she goes there "all the time."

The State delivered an audio recording of the interview to defense counsel, who then obtained an order from the trial court that the attorneys should refrain from making additional contact with the jurors. Defense counsel then filed a motion for new trial, alleging juror misconduct.

The trial court conducted a hearing, but the juror was not called to testify, and the court only heard arguments from the two sides. Defense counsel argued that the juror's visit to the crime scene was an outside influence, citing *McQuarrie v. State*, 380 S.W.3d 145 (Tex.Crim.App. 2012). Defense counsel also argued that he deserved an opportunity to question the juror because the State's questions during the interview appeared to be leading.

The State responded that the juror's visit was not an outside influence because the juror was already familiar with the area. The trial court agreed with the State. Defense counsel countered that the trial court was making a conclusion without the benefit of the juror's sworn testi-

mony. Defense counsel argued that he should be allowed to explore the juror's actions in open court, and then the trial court should determine whether those actions affected the juror's assessment of punishment.

The trial court responded that the scope of any examination would be limited to whether the juror made a visit to the crime scene. The juror could not be questioned about the substance of her deliberations. The court explained that its final analysis would be "whether or not a reasonable juror could believe that somehow her visit had an impact on the jury's ultimate sentence as to punishment." The court concluded, "I don't think I could make that jump." The court then denied the motion for new trial.

■ In her third issue, appellant argues that the trial court abused its discretion by denying her an evidentiary hearing on her motion for new trial. The only relief requested by appellant is an abatement for an evidentiary hearing.

■ We review the trial court's failure to conduct a hearing on a motion for new trial for an abuse of discretion. *See Martinez v. State*, 74 S.W.3d 19, 21–22 (Tex. Crim.App.2002). Under this standard, the trial court's decision may be reversed only if it was so clearly wrong as to lie outside the zone of reasonable disagreement. *See Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim.App.2009).

■ The purpose of a hearing is to decide whether the case should be retried and to prepare a record for presenting issues on appeal in the event the motion is denied. *Id.* at 338. Although the hearing on a motion for new trial is a critical stage, the right to a hearing is not absolute. *See Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim.App.2005). Generally, a trial court should hold a hearing if the defendant raises grounds in her motion that are both undeterminable from the record and reasonable, meaning they could entitle her to relief. *See Smith*, 286 S.W.3d at 340. If the defendant fails to show one or both of these requirements, the trial court does not abuse its discretion by ruling on the motion without the benefit of a hearing. *Id.* at 340 n. 23.

■ To be entitled to relief on the basis of juror misconduct, the defendant must establish that "an outside influence was improperly brought to bear on any juror." *See* Tex.R. Evid. 606(b); *McQuarrie*, 380 S.W.3d at 154 (holding that an outside influence is "something originating from a source outside of the jury room and other than from the jurors themselves"). Then, without delving into the jury's deliberations, the trial court must conduct an objective analysis to determine whether there is a reasonable probability that the outside influence had a prejudicial effect on the "hypothetical average juror." *See Colyer v. State*, 428 S.W.3d 117, 129–30 (Tex.Crim.App.2014); *McQuarrie*, 380 S.W.3d at 154.

The Court of Criminal Appeals has indicated that a juror's visit to the scene of the crime can amount to an outside influence. *See McQuarrie*, 380 S.W.3d at 154 n. 10 (citing *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 370 (Tex.2000)). The State contends that the juror's visit in this case was not an outside influence, citing at least three reasons: (1) the visit occurred after the guilt stage of the trial, and before deliberations had started during punishment; (2) substantial evidence had already been introduced regarding the scene of the crime, including scene diagrams and photographs; and (3) the juror had a personal knowledge of the crime scene that predated the trial. We need not decide whether these factors change the nature of the juror's conduct because, under any scenar-

io, the trial court could have reasonably concluded that there was no reasonable probability that her visit to the crime scene had a prejudicial effect on appellant's punishment.

The location of the crime was not a central issue during the punishment phase of trial, nor was it even a topic of discussion. The State focused, instead, on evidence showing that appellant had a long history of abusing narcotics. The State elicited testimony, for instance, that appellant's nursing license was suspended in 1979 because of an intemperate use of drugs. The State also referred to evidence that, in 2009, a little more two years before the events in this case, appellant was involved in another car accident that occurred under very similar circumstances.

The 2009 accident happened at night, on another city street. Appellant was driving without her headlights, and she crossed into an oncoming lane of traffic where she hit a car head-on. At least one witness heard a car horn before the accident, but the witness did not hear appellant applying her brakes.

No one was injured in the collision, but police determined that appellant was impaired. She showed clues of intoxication on all of her field sobriety tests. Appellant consented to a blood draw, and her toxicology report showed very high levels of both alprazolam (Xanax) and oxycodone (Percocet). Metaxalone (Skelaxin), a muscle relaxant, was also detected, but not in a measureable amount.

In its closing statements, the State argued that appellant was a danger to the community. The State referred to testimony admitted during the guilt stage of trial, which demonstrated that appellant had been warned at the time of her discharge that she should not drive for six months because of her seizure. The State argued that appellant was selfish in disre-garding that warning. Given her history of addiction, the State asked the jury to reject the option of community supervision and to assess punishment at twenty years' imprisonment. The State never mentioned the crime scene, or its length.

Defense counsel did not address the crime scene either. Counsel pleaded for sympathy, asking the jury to send appellant to a community supervision facility where she could be monitored and rehabilitated. Counsel believed that this was the most compassionate option given appellant's age (nearly 62 at the time of conviction) and her history of caring for others.

The trial court could have reasonably concluded that there was no reasonable probability that the juror's visit to the crime scene during the punishment stage of trial had a prejudicial effect on the ultimate sentence assessed. Continuing with that conclusion, the court could have determined that appellant's motion for new trial did not contain reasonable grounds that would entitle her to relief. We therefore hold that the trial court did not abuse its discretion by refusing to conduct a hearing where the juror was called to testify.

We overrule appellant's third issue.

## CONCLUSION

The trial court's judgments are affirmed.