**Affirmed and Memorandum Opinion filed September 24, 2020.**



In The

# Fourteenth Court of Appeals

NO. 14-19-00566-CR
NO. 14-19-00567-CR

**JARVIS SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause Nos. 1588936, 1588937**

## M E M O R A N D U M   O P I N I O N

In two issues, Appellant Jarvis Smith asserts (1) the evidence is legally insufficient to support his conviction for injury to an elderly individual; and (2) the trial court erred by admitting evidence of statements made by (and information learned from) the non-testifying complainant. For the reasons below, we affirm.

### BACKGROUND

Appellant was arrested in April 2018 and charged with two offenses: injury

to an elderly individual and harassment of a public servant. *See* Tex. Penal Code Ann. §§ 22.04, 22.11.[1] Appellant pleaded not guilty to both offenses and proceeded to a jury trial. The jury found Appellant guilty of both offenses and assessed punishment at 25 years' confinement for each offense, with the sentences to run concurrently. Appellant timely appealed.

**ANALYSIS**

Appellant raises two issues on appeal: (1) the trial court erred by admitting certain evidence; and (2) the evidence is legally insufficient to support his conviction for injury to an elderly individual. Because a successful legal sufficiency challenge will result in the rendition of an acquittal, we address Appellant's legal sufficiency issue before turning to his evidentiary challenge. *See Lara v. State*, 487 S.W.3d 244, 248 (Tex. App.—El Paso 2015, pet. ref'd); *Aldrich v. State*, 296 S.W.3d 225, 230 (Tex. App.—Fort Worth 2009, pet. ref'd).

## I.      Sufficiency of the Evidence

Appellant was charged with intentionally or knowingly causing bodily injury to an elderly individual. *See* Tex. Penal Code Ann. § 22.04 (a)(3), (e). In his second issue, Appellant argues that the evidence is legally insufficient to show that he committed this offense with the requisite *mens rea*.

### A.      Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the

---

[1] These offenses were tried under separate trial court numbers and Appellant filed a notice of appeal in both cases. On appeal, case number 14-19-00566-CR is the appeal from Appellant's conviction for harassment of a public servant and case number 14-19-00567-CR is the appeal from the conviction for injury to an elderly individual.

offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012). We consider all of the evidence in the record, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Jackson v. State*, 530 S.W.3d 738, 741 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). But we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder; the jury alone decides whether to believe eyewitness testimony. *Jackson*, 530 S.W.3d at 741. Likewise, we defer to the jury's responsibility to resolve any conflicts in the evidence. *Id*. at 741-42. The jury's verdict will be upheld unless "a rational fact finder must have had a reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

### B. Evidence

Craig Irving was the first witness to testify at Appellant's trial. According to Irving, he was driving down a street in southeast Houston on April 26, 2018, when he saw Appellant on the ground, "[r]olling on the corner of the edge of the street." Irving testified that he saw an "elderly guy" ("Complainant") trying to help Appellant get his legs out of the street. Irving was pulling his vehicle into a nearby parking lot when he saw Appellant stand up and hit Complainant. According to Irving, Complainant fell to the ground and Appellant continued to punch him — Irving testified that the punches "appear[ed] to be hard." Irving said he walked over to the men and "knocked" Appellant off of Complainant. Irving testified that Appellant "[l]ooked like a zombie."

Irving recalled that Houston police officers arrived at the scene shortly after

3

he approached Complainant and Appellant. Irving said Appellant knocked the hood ornament off of Complainant's truck and "just took on off". Irving testified that Complainant had a bloody face and appeared to be in pain. Irving did not know Complainant but described him as "an older man" who "looked like he was in his 70's."

Houston police officer Jeffrey Nemeth was the second witness to testify at Appellant's trial. Officer Nemeth said he and another officer were driving in southeast Houston when they saw Appellant "assaulting another male." According to Officer Nemeth, he got out of his vehicle and saw Appellant walk away into oncoming traffic. Officer Nemeth testified Appellant was "very sweaty and — breathing very heavily, deep respirations." Officer Nemeth recalled smelling an "acetone smell", which he described as "very common with a specific narcotic". Officer Nemeth testified that Appellant's behavior seemed consistent with someone under the influence of narcotics.

Officer Nemeth's body camera footage from his encounter with Appellant was admitted into evidence. The footage showed Officer Nemeth exiting his vehicle and approaching Appellant, Complainant, and Irving; Appellant then walks off into the street. Appellant begins to run away despite Officer Nemeth's instructions to stop. Officer Nemeth catches up to Appellant and handcuffs him.

The officers remain with Appellant until medical personnel arrive at the scene. On the footage, the officers can be heard making references to Appellant's suspected drug use. At one point, Officer Nemeth states that Appellant is "coming down".

Two paramedics arrive at the scene and one of the paramedics, William Easy, sits on the ground near Appellant and begins to perform an electrocardiogram. Easy states that Appellant appears to have had a prior heart

4

surgery. Because of this surgery and the suspected drug use, Easy recommends to the officers that Appellant be taken to the hospital. The footage then shows Appellant spitting on Easy's face,[2] after which Easy packs up his electrocardiogram machine and walks out of the camera's frame. Appellant remains sitting on the ground until an ambulance arrives to take him to the hospital.

Officer Nemeth remained with Appellant during the ambulance ride and at the hospital. Testifying at trial, Officer Nemeth said that no narcotics were found on Appellant and that Appellant was not tested to determine whether he was under the influence of drugs.

The jury heard testimony from a second Houston police officer, Joshua Hunt, who also responded to the incident. Like Officer Nemeth, Officer Hunt was wearing a body camera at the scene and testified regarding its footage as it was played for the jury. The footage showed Officer Hunt arrive at the scene while Appellant is being detained and handcuffed. Officer Hunt then walks across the street to the parking lot where Appellant's altercation with Complainant occurred. Irving walks up to Officer Hunt and tells him that Appellant was laying on the ground with his feet in the street before he stood up and began hitting Complainant.

Officer Hunt turns to Complainant and asks him if he is "alright"; Complainant responds in the affirmative and says he does not require medical attention. Hunt, Irving, and Complainant begin discussing Complainant's injuries, including a busted lip and injuries to his eyes and nose. Officer Hunt asks Complainant for his identification and Complainant hands Officer Hunt his

---

[2] This incident formed the basis of Appellant's conviction for harassment of a public servant. *See* Tex. Penal Code Ann. § 22.11.

driver's license. Officer Hunt writes down information from the license; the license cannot be seen in the footage.

Officer Hunt and Complainant walk to Complainant's truck to assess the damage. Continuing to recount the events that had occurred, Complainant says that Appellant hit him and that Complainant could not get Appellant off of him. Officer Hunt recommends to Complainant that he see a doctor.

Officer Hunt walks back across the street to where Appellant is detained. Officer Hunt tells the other officers the information he received from Complainant and Irving. Stating that Complainant was born in 1934, Officer Hunt says that Appellant can be charged with assault to an elderly individual.

After Appellant leaves the scene in the ambulance, Officer Hunt returns to the parking lot where Complainant and Irving are standing. Officer Hunt takes pictures of Complainant's face and of the damage to his truck.[3] Officer Hunt recommends that Complainant see his doctor because he is an "old guy" with "fragile bones". Officer Hunt tells Complainant that Appellant will be going to jail for "assault on the elderly".

Appellant is the last witness to testify at his trial. Appellant said that, the morning of the incident, he had donated plasma at the hospital before taking a bus to visit his family in southeast Houston. Appellant recalled getting off the bus, walking, and stopping to smoke a cigarette; after that, the only thing he recalled was being handcuffed by the officers. Appellant did not recall the incident with Complainant.

When questioned about the incident with paramedic Easy, Appellant said he recalled that Easy was placing electrodes on his chest while he was handcuffed and

_____

[3] Neither the photographs of Complainant nor those of his truck were admitted into evidence.

6

sitting on the ground. Appellant denied spitting in Easy's face. According to Appellant, he was shaking off sweat that had fallen on his face from an officer that was standing above him.

### C. Analysis

Focusing on the *mens rea* component of the charged offense, Appellant argues there "is nothing in the record" to show he acted intentionally or knowingly in causing bodily injury to Complainant.

Injury to an elderly individual is a "result of conduct" offense and the culpable mental state relates to the result of the conduct, *i.e.*, the causing of the injury. *Kelly v. State*, 748 S.W.2d 236, 239 (Tex. Crim. App. 1988) (en banc); *Duntsch v. State*, 568 S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Penal Code Ann. § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. at (b).

Proof of a culpable mental state almost always depends on circumstantial evidence and intent may be inferred from a defendant's acts, words, and conduct. *Darkins v. State*, 430 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.). "A factfinder may infer that a defendant intends the natural consequences of his or her acts." *Harmel v. State*, 597 S.W.3d 943, 954 (Tex. App.—Austin 2020, no pet.).

Citing his testimony from trial, Appellant asserts that he did not remember meeting Complainant and that his "first recollection of the incident was being placed in handcuffs." Appellant also points out that Irving testified that Appellant

7

looked like a "zombie" and Officer Nemeth opined that Appellant was on narcotics at the time of the incident. Contending that his behavior was "erratic enough to suggest he was a danger as much to himself as to others", Appellant argues his behavior was "as consistent with mental illness as intoxication."

To the extent Appellant asserts that the evidence shows he was intoxicated, evidence of a defendant's voluntary intoxication does not negate the *mens rea* elements of intent or knowledge. *See* Tex. Penal Code Ann. § 8.04(a); *see also Lopez v. State*, 544 S.W.3d 499, 503 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Voluntary intoxication is not a defense to the commission of an offense."). Further, he does not argue (and the evidence does not suggest) that Appellant was involuntarily intoxicated at the time of the incident. *See Woodman v. State*, 491 S.W.3d 424, 428-29 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (involuntary intoxication is an affirmative defense and a defendant is entitled to an instruction on that defense when it is supported by evidence).

Appellant also argues that his behavior could have been indicative of mental illness. Evidence of a defendant's history of mental illness may be presented to negate the *mens rea* element of the charged offense. *Ruffin v. State*, 270 S.W.3d 586, 596 (Tex. Crim. App. 2008). Appellant points to his testimony in which he recalled asking the officers to take him to the Harris County mental hospital and asserts that his "familiarity with that institution suggests previous visits for treatment." The jury also heard testimony that Appellant was rolling in the street before his encounter with Complainant and looked like a "zombie".

But it was within the province of the jury to weigh this evidence against other evidence suggesting Appellant committed the charged offense with the requisite *mens rea*. *See, e.g., Reyes v. State*, 480 S.W.3d 70, 77 (Tex. App.—Fort Worth 2015, pet. ref'd). Here, Irving testified that Appellant punched Complainant

numerous times and continued the assault after Complainant fell to the ground. Irving agreed that Appellant was punching Complainant "hard". From the body camera footage, the jury could discern that Appellant was larger than Complainant. The footage also showed Officer Hunt, Irving, and Complainant discussing Complainant's injuries, including a busted lip and injuries to his eyes and nose. This evidence supports the inference that Appellant intentionally or knowingly caused injury to Complainant. *See Martinez v. State*, 468 S.W.3d 711, 715 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (intent "may be inferred from the extent of injury and the relative size and strength of the parties"); *Martin*, 246 S.W.3d at 263 ("Intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties.").

Irving also testified that, after the officers arrived at the scene, Appellant knocked the hood ornament off of Complainant's truck before walking away. On Officer Nemeth's body camera footage, Appellant can be seen running from the scene after the officers approach him. After Appellant was handcuffed and detained, he spit on paramedic Easy as Easy was trying to perform an electrocardiogram.

This sequence of events — Appellant repeatedly hitting Complainant, damaging Complainant's truck, running from the officers, and spitting on paramedic Easy —supports the conclusion that Appellant was aware of his conduct and the attendant circumstances. From this evidence, the jury reasonably could infer that Appellant intentionally or knowingly caused bodily injury to Complainant during their altercation. Weighing this evidence against any evidence tending to suggest that Appellant had a mental illness was within the province of the jury, and we decline to disturb that determination on appeal.

We conclude that legally sufficient evidence supports Appellant's conviction for injury to an elderly individual. We overrule Appellant's second issue.

## II. Evidentiary Challenge

In his first issue, Appellant asserts that the trial court erred when it admitted video footage from Officer Hunt's body camera showing Complainant's post-incident statements describing his encounter with Appellant and his injuries. Arguing that these statements are testimonial in nature, Appellant argues the statements' admission into evidence violated his Sixth Amendment right of confrontation.

Appellant also argues that Officer Hunt's statements about the contents of Complainant's driver's license (*i.e.*, Complainant's age) violate his right of confrontation and the best evidence rule.

Turning to harm, Appellant argues this evidence was "necessary to prove an element of the offense of injury to an elderly person" and its improper admission warrants this conviction's reversal. Contending his conviction for harassment of a public servant also should be reversed, Appellant argues that, "[s]ince the two cases were tried together, it cannot be said beyond a reasonable doubt that the [evidence] did not contribute to Appellant's conviction or punishment" for harassment of a public servant.

### A. Right of Confrontation

The Sixth Amendment's Confrontation Clause prohibits introduction by the State of a testimonial hearsay statement unless (1) the declarant is unavailable to testify, and (2) the defendant had a prior opportunity to cross-examine the declarant. *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011); *Lee v. State*, 418 S.W.3d 892, 895 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Generally

speaking, a statement is "testimonial" when "surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," *i.e.*, "pretrial statements that declarants would expect to be used prosecutorially"; (2) "extrajudicial statements contained in formalized testimonial materials", such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).

### 1.    Statements Describing the Incident

We first apply these precepts to Complainant's statements describing his encounter with Appellant. Preserving this issue for our review, Appellant properly objected to Complainant's statements in the trial court on the grounds of hearsay and denial of the right of confrontation. *See* Tex. R. App. P. 33.1(a).

As discussed above, after the incident Complainant told Officer Hunt that Appellant hit him and Complainant could not get Appellant off of him. Officer Hunt, Complainant, and Irving also discussed Complainant's injuries, including a busted lip and injuries to his eyes and nose. The jury saw this exchange on Officer Hunt's body camera footage; the footage also showed Officer Hunt repeating Complainant's statements to the other officers. In addition, Officer Hunt testified about Complainant's statements at trial. We presume without deciding that the admission of this evidence constitutes a violation of Appellant's Sixth Amendment right of confrontation.

11

A violation of a defendant's right of confrontation is subject to a harmless error analysis. *Rubio v. State*, 241 S.W.3d 1, 3 (Tex. Crim. App. 2007); *Mason v. State*, 416 S.W.3d 720, 731 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Therefore, even if the admission of this evidence was erroneous, we nonetheless will affirm the conviction if we determine beyond a reasonable doubt that the alleged error did not contribute to Appellant's conviction. *Mason*, 416 S.W.3d at 731; *see also* Tex. R. App. P. 44.2(a). "[T]he question is whether the alleged constitutional error was actually a contributing factor in the jury's deliberations in arriving at a verdict." *Mason*, 416 S.W.3d at 731.

For this analysis we consider: (1) the importance of the statements to the State's case; (2) whether the statements were cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the statements on material points; and (4) the overall strength of the State's case. *Id*. We may also consider the source and nature of the error, the extent of the State's emphasis on the evidence, and the relative weight the jury may have assigned to the evidence as compared with the balance of the remaining evidence relevant to the issue. *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). We may also consider any other factor contained in the record that might shed light on the probable impact of the evidence on the mind of the average juror. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

After reviewing these considerations, we are persuaded beyond a reasonable doubt that the jury would have found Appellant guilty of injury to an elderly individual even if the trial court had not admitted evidence of Complainant's statements describing his encounter with Appellant and his injuries. This evidence was not imperative to the State's case; rather, it was cumulative of other evidence presented at trial. Irving, an eyewitness to the incident in question, testified that

12

Appellant punched Complainant numerous times, including after Complainant fell to the ground. Noting that Complainant's face was bloody after the assault, Irving said Complainant appeared to be in pain. On Officer Hunt's body camera footage, Irving can be heard relaying a similar account of the incident between Appellant and Complainant.

Further, Officer Nemeth said he saw Appellant "assaulting" Complainant as he and another officer were driving down the street. Officer Hunt also testified regarding the injures he saw on Complainant's eyes, nose, and mouth.

No evidence was admitted that contradicted the evidence showing that Appellant injured Complainant. Even Appellant did not deny the incident's occurrence — he only said that he did not remember it. Given the overall strength of the State's case — including testimony from two eyewitnesses that observed the incident in question — evidence regarding Complainant's statements to Officer Hunt was cumulative and not a contributing factor in the jury's deliberations in arriving at a guilty verdict.

We overrule Appellant's Confrontation Clause challenge with respect to Complainant's statements describing the incident.

### 2. Statements Regarding Complainant's Age

Arguing that Officer Hunt's statements about Complainant's age also violate his right of confrontation, Appellant contends that, "[b]y documenting [Complainant's] age, Hunt was obviously preparing for future litigation, a perfect example of a testimonial statement". Appellant raised this objection in the trial court and preserved the issue for appellate review. *See* Tex. R. App. P. 33.1(a).

Officer Hunt's body camera footage shows that, while Complainant was discussing the incident, he gave Officer Hunt his driver's license. Officer Hunt can

be seen writing down information from Complainant's license, but the license is not visible on the footage. After writing down the information, Officer Hunt returns to the other officers and tells them that Complainant was born in 1934; Officer Hunt also states that Appellant will be going to jail for "assault on the elderly". In his testimony at trial, Officer Hunt again stated that Complainant was born in 1934.

The Confrontation Clause prohibits the admission of testimonial hearsay statements unless certain conditions apply. *See Woodall v. State*, 336 S.W.3d 634, 639 n.6 (Tex. Crim. App. 2011); *De La Paz*, 273 S.W.3d at 680. However, a witness's testimony as to his personal observations of what happened and his reasonable inferences from those observations is not hearsay. *Trejo v. State*, 594 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2019, no pet.). This principle has been applied to admit officers' testimony about information learned from looking at a person's driver's license. *See, e.g., Wilson v. State*, 605 S.W.2d 284, 286 (Tex. Crim. App. [Panel Op.] 1980) (concluding that an officer's testimony regarding the appellant's name and picture on the driver's license the officer found in the appellant's car was not hearsay, the court held "[a] witness may assert the existence of a fact if his knowledge of that fact was gained through personal observation and reasonable inferences from that observation"); *see also Hunt v. State*, Nos. 05-91-00666-CR, 05-91-00667-CR, 1992 WL 210708, at *3 (Tex. App.—Dallas Aug. 24, 1992, pet. ref'd) (not designated for publication) ("A police officer, therefore, can testify about facts inferred from his personal observation of the printed name and picture on a driver's license combined with his observation of that person's face and person's admission of his name."); *Skruck v. State*, 740 S.W.2d 819, 821 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (same).

Pursuant to this line of authority, Officer Hunt properly could testify about

information he learned from looking at Complainant's driver's license, *i.e.*, Complainant's age. *See Wilson*, 605 S.W.2d at 286; *Skruck*, 740 S.W.2d at 821; *see also Hunt*, 1992 WL 210708, at *3. Therefore, because this testimony is not hearsay, it does not constitute a violation of the Confrontation Clause. *See Woodall*, 336 S.W.3d at 639 n.6; *De La Paz*, 273 S.W.3d at 680.

We overrule Appellant's Confrontation Clause challenge with respect to Officer Hunt's statements about Complainant's age.

## B. Best Evidence Rule

Finally, Appellant argues that Officer Hunt's statements on the body camera footage and his testimony regarding information he learned from Complainant's driver's license violate the best evidence rule. The State argues that this complaint has not been preserved for appellate review because Appellant did not raise the issue at trial.

To preserve a complaint for appellate review, the complaining party must state the grounds for the desired ruling to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). An objection must be specific enough for the trial court to understand the complaint at the time when the court is in the proper position to do something about it. *Resendez v. State*, 306 S.W.3d 308, 312-13 (Tex. Crim. App. 2009).

After Officer Hunt was questioned regarding the year of Complainant's birth as shown on his driver's license, Appellant objected on the grounds of "hearsay of a document not in evidence and our inability to confront that information with cross-examination". This objection does not raise with "sufficient specificity"

15

Appellant's best-evidence argument and does not preserve the issue for appellate review. *See* Tex. R. App. P. 33.1(a); *see also, e.g., C.D.R. v. State*, 827 S.W.2d 589, 591-92 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (the appellant's hearsay objection in the trial court did not preserve his best-evidence challenge for appeal).

We overrule Appellant's best-evidence challenge with respect to Officer Hunt's statements about Complainant's age. Because we do not sustain any of Appellant's evidentiary challenges, we do not reach his arguments regarding harm with respect to either conviction.

## CONCLUSION

We affirm the trial court's judgment.


/s/    Meagan Hassan
Justice


Panel consists of Justices Christopher, Jewell, and Hassan.
Do Not Publish — Tex. R. App. P. 47.2(b).

16