

# NUMBER 13-24-00459-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JUAN MORALES A/K/A
JUAN MANUEL MORALES,                                           Appellant,

v.

THE STATE OF TEXAS,                                           Appellee.

## ON APPEAL FROM THE 103RD DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Justices Silva, Peña, and West
### Memorandum Opinion by Justice West

Appellant Juan Morales a/k/a Juan Manuel Morales challenges his conviction of continuous sexual abuse of a young child, a first-degree felony for which he was sentenced to forty years' imprisonment. *See* TEX. PENAL CODE § 21.02(b), (h). On appeal, appellant argues that the trial court abused its discretion (1) when it denied his motions

for continuance to secure a defense expert, and (2) when it admitted an unavailable complainant's prior trial testimony because the State failed to demonstrate that it used reasonable means or a good-faith effort to secure the witness's presence. We affirm.

## I.    MOTION FOR CONTINUANCE

By his first issue, appellant argues that the trial court abused its discretion by denying his fourth and fifth motions for continuance.

## A.    Background

A grand jury indicted appellant on one count of continuous child sexual abuse against A.F. "and/or" J.M.,[1] the complainants. Appellant's first trial occurred on June 1, 2023, and ended in a mistrial. Appellant was retried on August 19, 2024.

Appellant's second trial was initially scheduled to begin on October 30, 2023. Defense counsel filed a motion for continuance on October 17, 2023. The motion stated that counsel was waiting on the transcripts from the first trial, and he "intend[ed] to retain an expert who is unable to estimate their total project cost until the length of the transcripts is determined." The trial court granted the continuance, and the trial was reset for March 18, 2024.

Defense counsel filed a second motion for continuance on March 5, 2024. The motion stated that defense counsel was waiting to receive "the Voir Dire transcript" from the first trial, and his expert was "unable to estimate their total project cost until the length of the transcripts is determined." The motion also stated that defense counsel had another

---

[1] To protect the identity of the minor children, we refer to them by their initials. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

case set for trial on the same day as this case. The trial court granted the continuance and scheduled a pretrial hearing for April 4, 2024.

Defense counsel filed a third motion for continuance on April 24, 2024. The motion again alleged that he was waiting to receive "the Voir Dire transcript" from the court reporter, which was needed to obtain the estimated cost for his defense expert. The motion also stated that defense counsel had a jury trial set to start on June 24, 2024. The trial court granted the continuance, and in its written order, scheduled a pretrial hearing for June 6, 2024, announcements for August 8, 2024, and trial for August 19, 2024.

Defense counsel filed a fourth motion for continuance on August 7, 2024. The motion stated that his expert was unavailable for the remainder of 2024, that defense counsel had hearings in two other cases in August, and "[g]iven that this case is set for re-trial, it has become essential for [c]ounsel to file new pre-trial motions to address issues that have arisen since the first trial," and no pre-trial hearings had been conducted "to clarify pending matters." At announcements the following day, defense counsel announced not ready. Counsel urged his fourth continuance motion and argued that he was "still missing the last part of the [first] trial transcript"; his expert, Aaron Pierce, was unavailable for the rest of the year; the State "failed to provide a new witness list"; and he was missing additional discovery from the State. As to Pierce, defense counsel alleged that he was "under the weather for a couple of months" because "he had major surgery." The trial court denied the continuance, stating: "This case has been set for over a year. It's already been tried once, and . . . it got reset until May, and then we reset it again until today. We gave you a preferential setting. The case is not set until August 19th. [Today

3

is] August 8th." The trial court then told the State and the court reporter to get defense counsel the requested items "by tomorrow."

Defense counsel filed a fifth, unverified motion for continuance on August 14, 2024. The motion stated, in pertinent part, that Pierce "had previously been unavailable earlier this year due to legitimate and documented medical reasons," and his "trial schedule prevents availability for the remainder of the 2024 year." Attached to the motion was a letter by Pierce dated April 8, 2024, stating that he was, as of that date, on medical leave, and was expected to return no later than June 17, 2024. Also attached to the motion was an affidavit from Pierce which listed his "current commitments though January 31, 2025" and a calendar showing his availability from August 2024 to January 2025. The motion stated that Pierce "is critical for providing testimony and analysis that directly impacts the [d]efendant's ability to present a complete defense."

On August 19, 2024, before jury selection, defense counsel re-urged his motion for continuance. The trial court denied the motion stating that the case "has been set for long enough."

**B.    Standard of Review & Applicable Law**

"A criminal action may be continued on the written motion of a party for sufficient cause shown." *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005) (citing TEX. CODE CRIM. PROC. art. 29.03). "The motion must be sworn to by someone who has personal knowledge of the facts relied on for the continuance." *Id.* (citing TEX. CODE CRIM. PROC. art. 29.08). Failing to file a sworn continuance motion results in unpreserved error. *See Woodman v. State*, 491 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("[A] sworn and written motion for continuance is necessary to preserve any

4

complaint associated with the denial of the motion." (citing *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012)); *see also Harris v. State*, No. 13-24-00017-CR, 2025 WL 3100995, at *4 (Tex. App.—Corpus Christi–Edinburg Nov. 6, 2025, pet. ref'd) (mem. op., not designated for publication) ("Texas courts have consistently held unsworn motions for continuance fail to preserve appellate review." (collecting cases)).

A defendant's first motion for continuance based on an absent witness, including an expert witness, must state: (1) the name of the witness and, if known, their residence, (2) that the defendant has exercised diligence to procure the witness's attendance, (3) the facts expected to be proved by the witness, "and it must appear to the court that [the facts] are material" to the case, (4) that the witness is not absent by the procurement or consent of the defense, (5) that the motion is not made for delay, and (6) "[t]hat there is no reasonable expectation that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term." TEX. CODE CRIM. PROC. art. 29.06; *see Gonzales v. State*, 304 S.W.3d 838, 843–44 (Tex. Crim. App. 2010) (noting that there is no specific statute governing "a pretrial motion for continuance for the purpose of securing expert assistance," and applying Article 29.06). Subsequent motions for continuance must comply with Article 29.06 and must also state that (1) "the testimony cannot be procured from any other source known to the defendant," and (2) "the defendant has reasonable expectation of procuring the same at the next term of the court." TEX. CODE CRIM. PROC. art. 29.07.

A trial court's ruling on a motion for continuance is reviewed for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Cruz v. State*, 565 S.W.3d 379, 381 (Tex. App.—San Antonio 2018, no pet.). To establish an abuse of

5

discretion, an appellant must show that (1) the trial court erred in denying the motion for continuance, and (2) such denial actually and specifically prejudiced appellant's defense. *Rodriguez v. State*, 667 S.W.3d 484, 498 (Tex. App.—Corpus Christi–Edinburg 2023, pet. ref'd) (citing *Gonzales*, 304 S.W.3d at 842). "That a party 'merely desired more time to prepare does not alone establish an abuse of discretion.'" *Id.* (quoting *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)).

## C.    Analysis

Appellant first contends that the trial court erred when it denied his fourth and fifth motions for continuance because Article 29.03 of the Texas Code of Criminal Procedure "mandates a continuance when a material witness is unavailable due to illness and supported by an affidavit." However, appellant cites to no authority for this proposition. *See* TEX. CODE CRIM. PROC. art. 29.03. Article 29.03 does not "mandate" a continuance when a material witness is unavailable due to an illness—it merely states that a criminal action "may" be continued on a written motion by a party "upon sufficient cause shown." *See id.* ("A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion.").

Moreover, Pierce was not unavailable at trial due to an illness. According to his letter, he was on medical leave from April 8, 2024, until approximately June 17, 2024. But appellant filed Pierce's letter on August 14, 2024, and at that point, trial was set for August 19, 2024. Pierce's own affidavit indicated that his "commitments" from August 19 to August 23, 2024, were for "personal days and trial preparation." Even if we entertain

6

appellant's argument that "Article 29.03 mandates a continuance when a material witness is unavailable due to illness and supported by an affidavit," such facts are not before us.

Further, appellant's fourth and fifth motions for continuance do not comply with the Texas Code of Criminal Procedure. As stated above, a defendant's first motion for continuance based on an absent witness has various requirements. *Id*. art. 29.06. Appellant's fourth motion for continuance, which was the first continuance motion based on Pierce's unavailability, did not: (1) include his name or residence, if known, (2) state the diligence used to procure the Pierce's attendance, (3) the material facts expected to be proved by Pierce, and (4) that Pierce was not absent by the procurement or consent of the defense. *See id.* Appellant's fifth continuance motion was also not verified or sworn, and any error associated with the fifth motion is not preserved for appellate review. *See Woodman*, 491 S.W.3d at 428 ("Because appellant's first motion was not properly sworn, we conclude that she failed to preserve her complaint for appellate review."); *see also Harris*, 2025 WL 3100995, at \*4–5 (holding that appellant failed to preserve his argument "that the trial court improperly denied his second motion for continuance, wherein he complained" two witnesses were unavailable because the motion for continuance was unsworn). Even if we were to consider it, appellant's fifth motion for continuance also failed to comply with various requirements under Articles 29.06 and 29.07. TEX. CODE CRIM. PROC. arts. 29.06, 29.07.

Appellant argues that the trial court "failed to consider the materiality of the testimony when it denied the motion[s] for continuance." He contends that "Pierce's testimony was critical to rebut the forensic conclusions" by a sexual assault nurse examiner, "as well as the findings of the child advocacy counselor," which he contends,

7

"were based largely on testimonial hearsay from J.M. admitted under Rule 804(b)(1) and on a prior medical record." But appellant's continuance motions never explained what Pierce was going to testify about, and appellant failed to show how Pierce's testimony was going to be "material" to his case. *See* TEX. CODE CRIM. PROC. art. 29.06(3) (a motion for continuance based on the absence of a witness must "state the facts expected to be proved by the witness, and it must appear to the court that they are material"). Even if we consider appellant's fifth motion for continuance, that motion merely stated that Pierce was "critical for providing testimony and analysis that directly impacts the [d]efendant's ability to present a complete defense." "Mere conclusions and general averments are not sufficient for the court to determine the materiality of the facts, and the motion for continuance must show on its face the materiality of the absent testimony." *Harrison*, 187 S.W.3d at 434; *see also Garay v. State*, No. 08-01-0336-CR, 2003 WL 22024820, at *3 (Tex. App.—El Paso Aug. 28, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that appellant failed to preserve error related to the denial of his motion for continuance because the motion did not state what his expert's "testimony would have been or that it would have been material and beneficial[ ]to him," and appellant's "motion for new trial merely asserted that he was denied an expert to assist in his defense").

In sum, the trial court granted appellant's first three motions for continuance, and as explained above, the two motions it denied failed to comply with the requirements under the Texas Code of Criminal Procedure. Based on the facts before us, we cannot hold that the trial court abused its discretion when it denied appellant's fourth and fifth motions for continuance. We overrule appellant's first issue.

## II. EFFORTS TO SECURE WITNESS UNDER RULE 804 AND THE CONFRONTATION CLAUSE

By his second issue, appellant argues that the trial court erred when it allowed J.M.'s prior trial testimony into evidence because the State failed to show "reasonable means" and "a good-faith effort" to secure J.M.'s presence at trial as required by Texas Rule of Evidence 804 and the Confrontation Clause of the Sixth Amendment. *See* TEX. R. EVID. 804; U.S. CONST. amend. VI.

### A. Background

On August 22, 2024, the third day of evidence, the prosecutors informed the trial court that J.M. did not appear. The prosecutors explained that if J.M. did not return their phone calls "within the next twenty minutes," then the State would seek a writ of attachment. After testimony concluded about three hours later, the prosecutors updated the trial court that they "ha[d] made efforts to contact" J.M., and "[s]he has not agreed to appear." The prosecutors requested that the trial court grant the writ of attachment, which was filed earlier that day. Defense counsel requested to see "the service of citation" for J.M.'s subpoena, and Sergio Padilla, a criminal investigator for the District Attorney's Office, was sworn in to testify about his communications with J.M.

Padilla testified that J.M. was subpoenaed via email on Thursday, August 15, and on that same day, she acknowledged receipt of the email via text. Padilla explained that he was texting with her "to coordinate a victim meeting with [the] prosecutors," which she later "canceled last minute." One of the prosecutors interjected and told the trial court that she has been "in personal contact with [J.M.]":

> Your Honor, I can add to that. I've been in personal contact with her. I do have her phone number. She has been answering up until today at noon. We were trying to make arrangements for child care. She needed to call the

father of her children. I asked for confirmation of time so we could send over two female investigators, and she just ceased communication.

The prosecutor further explained that, since August 15, "We coordinated three meetings with her. She gave valid reasons for not showing up, so up until this point, we thought that she was going to communicate—or be cooperative, in terms of testifying for trial, Judge." The trial court granted the request and issued the writ of attachment.

The following morning, the prosecutors informed the trial court and defense counsel that the State's investigators were unable to locate J.M. The prosecutors explained that the investigators visited J.M.'s most recently registered address that morning, they "knocked on her door for about 30 minutes and [received] no response," J.M. was "not responding to any phone calls," and the prosecutor reached out to her family and "we[re] unable to find her." The prosecutor concluded that the State met "the unavailability standard" under Texas Rule of Evidence 804 and requested to admit J.M.'s prior trial testimony pursuant to Rule 804(b).

Defense counsel lodged multiple objections. He first attacked the sufficiency of J.M.'s subpoena. The subpoena's return indicated that it was "hand-delivered" to J.M. which contradicted Padilla's testimony from the previous day. Defense counsel further argued that "a subpoena by email requires acknowledgment of receipt," the State had introduced "no proof that that was actually done," and the State had failed to provide an affidavit and verification in its motion for the writ of attachment. Defense counsel concluded that the State "has not shown its due diligence" to secure J.M.'s presence.

The trial court found that the State used due diligence to locate J.M. and overruled the defense's objections. J.M.'s prior testimony was admitted and read aloud to the jury.

10

**B.      Standard of Review & Applicable Law**

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). "Considering that the trial court has the best view of the evidence, an appellate court will uphold a trial court's ruling on admissibility so long as it is within the 'zone of reasonable disagreement.'" *Id.*

Former testimony of an unavailable witness is admissible in a criminal case if (1) the testimony was given by the witness at a trial or hearing of the current or a different proceeding and (2) the party against whom the testimony is offered had opportunity and similar motive as in the pending matter to develop the testimony in the prior proceeding. TEX. R. EVID. 804(b)(1)(B). "[A] declarant is considered to be unavailable if the declarant is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance or testimony." *Id.* R. 804(a)(5). "Other reasonable means is not defined and must be determined on a case-by-case basis. The inquiry is necessarily fact dependent." *Elsik v. State*, 714 S.W.3d 27, 37 (Tex. Crim. App. 2024).

The Sixth Amendment's Confrontation Clause similarly permits admission of testimony from a prior judicial proceeding in place of live testimony at trial if (1) the declarant is unavailable to testify, and (2) the defendant had a prior opportunity to cross-examine the declarant. *Reed v. State*, 312 S.W.3d 682, 685 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The Confrontation Clause requires the State to demonstrate that it made a good-faith effort to obtain the witness's presence. *Elsik*, 714 S.W.3d at 41; *Reed*, 312 S.W.3d at 685.

## C.     Analysis

Appellant argues that the State failed to show "reasonable means" or a good-faith effort to obtain J.M.'s presence at trial because, he contends, there was improper service by email, "post hoc return of service," "inconsistent and misleading testimony," the writ of attachment was improperly issued, and the State used inadequate "last-minute efforts" to secure J.M.'s presence. *See* TEX. R. EVID. 804; U.S. CONST. amend. VI.

The trial court was presented with the following evidence of the State's efforts to locate J.M.:

- On August 22, the prosecutors informed the trial court that J.M. was not responding, and they were going to file a writ of attachment if she did not answer "within the next twenty minutes."

- About three hours later, the prosecutors told the trial court that J.M. continued to be unreachable, and she had not agreed to appear.

- Padilla testified that he served J.M. with a subpoena via email on August 15, 2024, which was four days prior. The subpoena informed J.M. that she needed to show up to court on the provided trial date, and J.M. texted him that same day acknowledging receipt of the email.

- One of the prosecutors testified that she had been "in personal contact" with J.M. since August 15. The prosecutor further testified that she had scheduled three meetings with J.M. since then, and because J.M. always gave "valid reasons for not showing up," she had no reason to believe that J.M. was not going to cooperate.

12

- The same prosecutor testified that, as of about noon that day, J.M. had stopped returning her texts or calls.

- The following day, prosecutors explained that investigators visited J.M.'s residence that morning, "knocked on her door for about 30 minutes and [received] no response"; that J.M. was "not responding to any phone calls"; and that they reached out to J.M.'s family, who were unable to locate her.

Appellant contends that the State did not use "sustained, documented, or multi-pronged efforts" to locate J.M., and "there was no meaningful pretrial diligence." However, the State had no reason to believe that J.M. was not going to show up for trial because its prosecutors and investigators communicated with her consistently in the days leading up to her testimony. Moreover, once J.M. stopped communicating, the State notified the court, continued to call her repeatedly, the State's investigators attempted to serve J.M. the writ of attachment at her last known residence, and the State reached out to her family to find her whereabouts. *See Reed*, 312 S.W.3d at 686 (holding that the trial court did not abuse its discretion when it found that the State made good-faith efforts to obtain the witness's presence at trial because the State's investigator made "repeated efforts" to locate the witness, including calling her constantly-changing cell phone numbers and contacting multiple family members); *cf. Elsik*, 714 S.W.3d at 33 (holding that "[t]he State failed to establish unavailability when it took no steps to determine whether it could secure the declarants' attendance or testimony" and relied on the prosecutor's hypotheticals and assumptions); *Reyes v. State*, 845 S.W.2d 328, 330–31 (Tex. App.—El Paso 1992, no pet.) (holding that the State did not demonstrate a good-faith effort to locate the witness where the State's search for the witness began "only three days before trial," and "the

State enlisted the assistance only from the witness's family, asking his grandmother to find him in Mexico"); *Otero-Miranda v. State*, 746 S.W.2d 352, 355 (Tex. App.—Amarillo 1988, pet. ref'd, untimely filed), *abrogated by Elsik*, 714 S.W.3d at 27 (same, where the only measure the appellant took to locate the witness was "issuing unserved subpoenas"); *see also Gonzales v. State*, No. 04-00-00183-CR, 2001 WL 518428, at *3 (Tex. App.— San Antonio May 16, 2001, no pet.) (not designated for publication) (same, where the State offered no witnesses to testify as to the good-faith efforts it expended to serve the two eyewitnesses, and the record indicated that "the sheriff's office had made two unsuccessful attempts" to serve the witnesses).

From these facts, we cannot conclude that the trial court abused its discretion when it overruled the defense's objections and found that the State demonstrated reasonable means or a good-faith effort to secure J.M.'s presence. *See* Tex. R. Evid. 804; U.S. Const. amend. VI; *Elsik*, 714 S.W.3d at 41; *Reed*, 312 S.W.3d at 685. Accordingly, we overrule appellant's second issue.

### III.    CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed on the
7th day of May, 2026.

14